UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MICHAEL J. PICKARD,                                                                              Plaintiff,

v.                                                                       Civil Action No. 3:15-cv-P305-DJH

OFFICER HARDY et al.,                                                                          Defendants.

\* \* \* \* \*

### **MEMORANDUM OPINION**

Plaintiff, Michael J. Pickard, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the following reasons, the complaint will be dismissed.

### I. SUMMARY OF CLAIMS

The incidents about which the complaint is concerned occurred while Plaintiff, a convicted inmate, was housed at the Hardin County Detention Center (HCDC). Plaintiff has since been moved to another facility. Plaintiff names as Defendants HCDC Correctional Officer A. Hardy in his individual and official capacities and the HCDC. He alleges that on April 5, 2015, he and other inmates were having a conversation about how they did not understand how anyone could be homeless because it is easy to make money on the streets. He states that when Defendant Hardy heard the tenor of their conversation, he asked Plaintiff, "'Will you suck a d\*\*\* for five dollars?'" Plaintiff states that he was "shocked" and that a couple of days later he asked for a § 1983 form "to legally and officially report the incident." He states that he was then questioned by a female correctional officer as to what happened because she needed to open a Prison Rape Elimination Act (PREA) investigation.

Plaintiff states that the next morning Defendant Hardy woke him up at 8:00 a.m. by "yelling and throwing my towel around" and told Plaintiff to "get out from under [the] blankets" and get dressed. He states that later that day he learned that Defendant Hardy had been questioned about the incident initiating the PREA investigation, which according to the complaint, explains why Defendant Hardy had been "hostile" toward Plaintiff that morning.

Plaintiff further alleges that he filed a grievance on Defendant Hardy but was told the grievance committee never received it. He further alleges that grievances that he "turn[s] in [are] deliberately not getting answered."

Plaintiff states that in June 2015 he asked if he could be put in lockdown away from Defendant Hardy. He alleges that the next night he was awaked between 9:00 and 10:00 p.m. by Defendant Hardy who told him to collect his things. Plaintiff states:

> I told him I didn't want to move. I asked, "Where am I going?" he slammed his clip board, pulled out his gloves, started yelling and screaming at me. I was afraid to move, still half asleep, deeply disturbed by Hardy[']s violent outburst. I was trembling uncontrollably. I was trying to get my thing[s] together, but Hardy would not stop yelling at me, trying to provoke me. He . . . pulled his taser out on me. I said, "that[']s not needed, that[']s not necessary.["] He tells me to just get my jump suit on and come on!

Plaintiff states that Defendant Hardy took him to the drunk tank. Along the way, Plaintiff got another correctional officer's attention, but that officer told Plaintiff, "'I'm sick of dealing with you, you are on disciplinary and will be staying in the drunk tank for the night.'"

Plaintiff also complains about another incident in April 2015 involving Officer Lewis, who is not named as a defendant. According to Plaintiff, Officer Lewis was aggravated that some of Plaintiff's cell mates were not following orders and began swearing, including saying, "'God damn.'" Officer Lewis denied to the inmates that he had said "God damn," insisting that he had said, "Got damn." Plaintiff told him to "'put it on paper,'" which made Officer Lewis

2

angrier. Officer Lewis told Plaintiff to pack up his things to go to lockdown and "aggressively" pointed his taser at Plaintiff. Plaintiff states that another officer stepped in and said she would take Plaintiff to lockdown. According to the complaint, although Plaintiff was originally told that Officer Lewis was writing Plaintiff up for non-compliance and disrespecting an officer, after an investigation, the shift leader told Plaintiff that he was not being written up and was just put on a 24-hour cool down.

Plaintiff alleges that Defendant Hardy's comment regarding "suck[ing] a d*** for five dollars" was unprofessional and constituted defamation, sexual harassment, and discrimination. He also alleges that he was retaliated against by other officers for reporting Defendant Hardy's "malfeasance." He alleges that HCDC committed an "infraction for not properly training their employees." As relief, Plaintiff asks for monetary and punitive damages and injunctive relief.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1) and (2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. When determining whether a plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in a light most favorable to Plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally

3

construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### A. Claims for injunctive relief

Plaintiff's requests for injunctive relief are moot because he is no longer incarcerated at the HCDC. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Therefore, those claims will be dismissed for failure to state a claim upon which relief may be granted.

### B. Claims against the HCDC and Defendant Hardy in his official capacity

Plaintiff sues the HCDC. The HCDC is not a "person" subject to suit under § 1983 because municipal departments, such as jails, are not suable under § 1983. *See Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991) (holding that a police department may not be sued under § 1983); *Marbry v. Corr. Med. Serv.*, No. 99-6706, 2000 WL 1720959, at *2 (6th Cir. Nov. 6, 2000) (holding that a jail is not an entity subject to suit under § 1983). In this situation, it is Hardin County that is the proper defendant. *Smallwood v. Jefferson Cty. Gov't*, 743 F. Supp. 502, 503 (W.D. Ky. 1990) (construing claims brought against the Jefferson County Government, the Jefferson County Fiscal Court, and the Jefferson County Judge Executive as claims against Jefferson County itself). Further, Hardin County is a "person" for purposes of § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The Court therefore will construe the claims against the HCDC as brought against Hardin County. Similarly, the claims against Defendant Hardy in his official capacity are considered to be brought against Hardin County. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

When a § 1983 claim is made against a municipality, like Hardin County, a court must analyze two distinct issues: (1) whether the plaintiff's harm was caused by a constitutional

violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights*, *Tex.*, 503 U.S. 115, 120 (1992). The Court will address the issues in reverse order.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in original); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in *Pembaur*).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds*, *Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)); *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 404 (1997) (indicating that plaintiff must demonstrate "deliberate conduct").

Here, Plaintiff has not identified a policy or custom of Hardin County resulting in the alleged constitutional violations.  Plaintiff does complain that grievances he filed at the HCDC were not answered or went missing.  However, an inmate grievance procedure within the prison system is not constitutionally required.  *United States ex rel. Wolfish v. Levi*, 439 F. Supp. 114, 163 (S.D.N.Y. 1977), *aff'd sub nom*, *Wolfish v. Levi*, 573 F.2d 118 (2nd Cir. 1978), *rev'd on other grounds by Bell v. Wolfish*, 441 U.S. 520 (1979); *Spencer v. Moore*, 638 F. Supp. 315 (E.D. Mo. 1986); *O'Bryan v. Cty. of Saganaw*, 437 F. Supp. 582, 601 (E.D. Mich. 1977).  If the prison provides a grievance process, violations of its procedures do not rise to the level of a federal constitutional right.  *Spencer*, 638 F. Supp. at 316.  Thus, even were the Court to interpret Plaintiff's claim about his missing/unanswered grievances as alleging a municipal policy or custom, such a complaint does not state a claim.

Moreover, Plaintiff's claim that the HCDC committed an "infraction for not properly training their employees" is too vague and conclusory to support a § 1983 claim.  Although *pro se* complaints are held to less stringent standards than complaints prepared by an attorney, a complaint cannot rest on bare assertions of legal conclusions or personal opinions.  *Twombly*, 550 U.S. at 555.  Consequently, the claims against Hardin County and Defendant Hardy in his official capacity will be dismissed.

### *C.  Claims against Defendant Hardy in his individual capacity*

#### *1.  Verbal abuse and threats*

Plaintiff alleges that Defendant Hardy woke him at 8:00 a.m. one morning by yelling and throwing his towel around and one evening at 9:00 or 10:00 p.m. by yelling at him.  The Sixth Circuit has held that harassment or degrading language by a prison official, although unprofessional and despicable, does not amount to a constitutional tort.  *Johnson v. Unknown*

*Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) ("[V]erbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim."); *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Searcy v. Gardner*, No. 3:07-0361, 2008 WL 400424, at *4 (M.D. Tenn. Feb. 11, 2008) ("A claim under 42 U.S.C. § 1983 cannot be based on mere threats, abusive language, racial slurs, or verbal harassment by prison officials."). Thus, Plaintiff's claims against Defendant Hardy related to his allegedly verbally abusive and harassing behavior will be dismissed.

Nor does the sexual nature of Defendant Hardy's original comment to Plaintiff transform Defendant's Hardy's actions into an Eighth Amendment violation. Circuit courts have consistently held that acts of verbal sexual harassment, standing alone, are insufficient to state a claim under the Eighth Amendment. *See, e.g.*, *Morales v. Mackalm*, 278 F.3d 126, 132 (2nd Cir. 2002) (holding that allegations that prison guard asked prisoner to have sex with her and to masturbate in front of her and other female staffers did not rise to level of an Eighth Amendment violation); *Zander v. McGinnis*, No. 97-1484, 1998 WL 384625, at *2 (6th Cir. June 19, 1998) (holding that verbal abuse of mouthing "pet names" at prisoner for ten months failed to state an Eighth Amendment claim). Thus, Plaintiff has not stated a constitutional claim related to Defendant Hardy's original comment to him.

Plaintiff also alleges that in June 2015, in addition to yelling at Plaintiff, Defendant Hardy "pulled his taser . . . on [Plaintiff]." However, according to the complaint, Defendant Hardy did not tase Plaintiff or use any other force on him. Moreover, according to the complaint, Defendant Hardy pulled his taser out after Plaintiff responded to Defendant Hardy's order to move by saying that he did not want to move and questioning where he was going.

Thus, Plaintiff's allegations demonstrate that when Defendant Hardy pulled out his taser, Plaintiff was not complying with Defendant Hardy's orders.

The Court finds that Plaintiff has failed to state an Eighth Amendment claim regarding Defendant Hardy having pulled out his taser after Plaintiff engaged in recalcitrant behavior. The Sixth Circuit has rejected an Eighth Amendment claim where a prison officer's use of a stun gun was necessary to enforce his orders on a recalcitrant inmate, *Caldwell v. Moore*, 968 F.2d 595, 601 (6th Cir. 1992), and courts in other jurisdictions have found that the mere threat to use a taser does not support a claim of excessive force, especially where the prisoner is non-compliant with the instructions of the officer in question. *See Michenfelder v. Sumner*, 860 F.2d 328, 336 (9th Cir. 1988) ("[T]he evidence in this case does not support finding an unconstitutional use of the taser gun against Michenfelder himself, who has complained only of its threatened use in the course of a strip search."); *Salvodon v. Ricotta*, No. 07-CV-174, 2013 WL 3816728, at *6 (E.D.N.Y. July 22, 2013) (finding no claim stated based on threatened use of taser alone); *Noe v. West Virginia*, No. 3:10-CV-38, 2010 WL 3025561, at *7 (N.D.W. Va. July 29, 2010) ("[M]erely pointing a taser at the plaintiff cannot support a claim for excessive force, especially in the light of the plaintiff's 'protest' to being questioned about his possession of a controlled substance."). Thus, the claim related to the taser will be dismissed.

## 2. Retaliation

Plaintiff alleges that Defendant Hardy's actions the morning after Plaintiff was questioned by another correctional officer were retaliation for reporting Defendant Hardy, thereby causing a PREA investigation of Defendant Hardy.

Retaliation based upon a prisoner's exercise of his constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set

8

forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id*.

Assuming for purposes of this initial screening that Plaintiff was engaged in protected conduct in reporting Defendant Hardy and thereby initiating a PREA investigation, the only adverse actions he alleges by Defendant Hardy consist of verbal harassment and minor threats, *i.e.*, yelling, throwing Plaintiff's towel, slamming a clip board down, and pulling out his taser (but not using it) when Plaintiff was not complying with his orders. The law is clear that verbal harassment and minor threats are not adverse actions that would deter a person of ordinary firmness from engaging in protected conduct. *See Thaddeus-X*, 175 F.3d at 398 (stating that "certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations"); *Smith v. Craven*, 61 F. App'x 159, 162 (6th Cir. 2003) (finding that verbal harassment and minor threats were insufficient to state adverse actions that could deter a person of ordinary firmness from engaging in protected conduct); *Carney v. Craven*, 40 F. App'x 48, 50 (6th Cir. 2002) (same).

Plaintiff also alleges, "I was also retaliated against by other officers for reporting the malfeasance, just by voicing to my peers the right to their First Amendment right of assembly and petition." This allegation is unclear, but in any event, as explained above, Plaintiff has not alleged that adverse action was taken against him that would deter a person of ordinary firmness from engaging in protected conduct. Moreover, this claim does not allege that Plaintiff was engaged in protected conduct. Finally, Plaintiff does not name any "other officers" as Defendants. Thus, Plaintiff's allegations regarding retaliation fail to state a claim.

### D. *Other claims*

Plaintiff also complains about another incident in April 2015 involving Officer Lewis, who is not named as a defendant. When Plaintiff told Officer Lewis to "'put it on paper,'" Officer Lewis told Plaintiff to pack up his things to go to lockdown and "aggressively" pointed his taser at Plaintiff. Plaintiff states that another officer stepped in and said she would take Plaintiff to lockdown. However, Plaintiff was not written up for non-compliance or disrespecting an officer but was just put on a 24-hour cool down.

The Court finds that there is no need to allow Plaintiff to amend his complaint to add Officer Lewis as a defendant because Plaintiff's allegations relating to Officer Lewis do not amount to a constitutional violation. Officer Lewis aimed his taser at Plaintiff after Plaintiff had at the very least been disrespectful to Officer Lewis by giving Officer Lewis a command to "'put it on paper.'" And, again, Plaintiff was not in fact tased by Officer Lewis, or even escorted to lockdown by Officer Lewis.

### E. *State-law claims*

Because Plaintiff's federal-law claims will be dismissed, the Court declines to exercise its supplemental jurisdiction over Plaintiff's state-law claims, such as defamation. *See* 28 U.S.C. § 1367(c)(3). Those claims will be dismissed without prejudice.

### III. CONCLUSION

For the foregoing reasons, the Court will by separate Order dismiss Plaintiff's complaint.

Date: March 1, 2016

**David J. Hale, Judge**
**United States District Court**

cc: Plaintiff, *pro se*
     Defendants
4415.009